ORIGINAL

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

APR 2 2 2015

JAMES N. HATTEN, Clerk
By: _____
Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA

| | | |
|---|---|---|
| **JAMES C. DAVIS,** | § | |
| **PROSE.** | § | |
| | § | |
| **PLAINTIFF** | § | |
| | § | |
| **vs.** | § | **CIVIL ACTION NO. 1:15-CV-1254** |
| | § | **Jury Demanded** |
| **JEH JOHNSON, SECRETARY,** | § | |
| **DEPARTMENT OF HOMELAND** | § | *TWT* |
| **SECURITY, NATIONAL PROTECTION** | § | |
| **PROGRAMS DIRECTORATE,** | § | |
| **IMMIGRATIONS CUSTOMS** | § | |
| **ENFORCEMENT, FEDERAL** | § | |
| **PROTECTIVE SERVICE** | § | |
| | § | |
| **Defendant.** | | |

AMENDED

---

## PLAINTIFF, JAMES C. DAVIS
## ORIGINAL COMPLAINT AND JURY DEMAND

---

**TO THE HONORABLE JUDGE OF SAID COURT:**

NOW COMES JAMES C. DAVIS hereinafter called Plaintiff complaining of and about

DEPARTMENT OF HOMELAND SECURITY hereinafter called Defendants, and for cause of

action shows unto the Court the following:

## I. PARTIES AND SERVICE

1.      Plaintiff JAMES C. DAVIS is a citizen of the United States and the State of GA and

resides in FULTON County, GA.

2.   Defendant Jeh Johnson, as Secretary of the DEPARTMENT OF HOMELAND SECURITY

which consists of Defendants IMMIGRATTONS AND CUSTOMS ENFORCEMETNT and

NATIONAL PROTECTION & PROGRAMS DIRECTORATE and FEDERAL PROTECTIVE

SERVICE of the United States of America such that suit is authorized under the Federal Tort

Claims Act. Service upon the Department of Homeland Security may be accomplished by

serving the following persons with a summons and copy of this Complaint:

A.      Department of Homeland Security:
        The Honorable Jeh Johnson,
         Secretary Department of Homeland Security
        Washington, D.C. 20528


B.      ICE Immigration and Customs Enforcement:
         Sarah R. Saldaña, Assistant Secretary for LC.E.
         National Capital Region (NCR-II)
         Building 74 E., Room 110
         Southeast Federal Center
         Third and M Street, SE. Washington, DC  20407


C.      NPPD National Protection & Programs Directorate:
         Suzanne E. Spaulding, Assistant Secretary for LC.E.
         National Capital Region (NCR-II)
         Building 74 E., Room 110
         Southeast Federal Center
         Third and M Street, SE. Washington, DC  20407


D.      FPS Federal Protective Service
         L. Eric Patterson, Director, Federal Protective Service
         National Capital Region (NCR-II)
         Building 74 E., Room II 0
         Southeast Federal Center
         Third and M Street, SE. Washington, DC  20407

## II. JURISDICITION AND VENUE

3.      The action arises under Title VII, 42 U.S.C. Section 2000e et. seq. and 42 U.S.C. Section 1981 as amended by the Civil Rights Act of 1991 as hereinafter more fully appears.

4.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. Sections 1331 and 1343. This action is authorized and instituted pursuant to Title VD of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of race, age, and reprisal 42 U.S.C. 20000 et. Seq., 42 U.S.C.

## III. NATURE OF ACTION

5.      The Court has personal jurisdiction over Plaintiff by virtue of his filing this Complaint with the Clerk of the Court. The Court bas jurisdiction and venue over Defendants pursuant to 28 U.S.C. Section 1391 and proper service of summons with a copy of this Complaint. Furthermore, jurisdiction and venue is proper as Defendant is an employer within the meaning of 42 U.S.C. 2000e (b) and (c) and does business in the state of Georgia on a regular basis.

## IV. CONDITIONS PRECEDENT

6.      All conditions precedent to jurisdiction have occurred or been complied with: a charge of discrimination was filed with the Equal Employment Opportunity Commission within forty five days of the acts complained of herein and the Agency' s forty day period for issuing a Final Decision was issued by the Equal Employment Opportunity Commission, Office of Federal Operations.

7.      Defendants, through its agents, supervisors, and employees, discriminated against Plaintiff based on his race (Black), sex (male) and reprisal for prior EEO activity.

Specifically, Plaintiff, who is an African American, male, over 40 years of age with EEO

activity, discriminated against, retaliated by mangers, Harassed, civil rights violated to testify in

a trail and investigated him repeatedly by management DHS investigative unit OPR. The

plaintiff is a law enforcement officer and his job title is Physical Security Specialist with law

enforcement duties in the Atlanta Central District Office.

Federal Protective Service was initially underneath the umbrella of General Services Administration

(GSA).  Federal Protective Service (FPS) was removed from underneath GSA and placed under the

umbrella of the Department of Homeland Security (DHS) and Immigrations and Customs

Enforcement (ICE) effective on or about March 1, 2003.  When the relationship between FPS, ICE

and DHS was created, FPS's procedures naturally fell under the guidelines of the two entities (See

memorandum of Agreement between DHS and GSA); (Exh.1).  In November 3, 2009, the Federal

Protective Service was transferred within the Department of Homeland Security (DHS) from

Immigrations and Customs Enforcement (ICE) to National Protection and Programs Directorate with

the same guidelines and agreements between GSA and DHS. FPS had meaningful changes, and

meaningful changes occurred with its 'Employees' job circumstances, and its Law Enforcement

Officer's (LEO) status is defined by the Defendant Agency to detect and defend against weapons of

mass destruction and terrorism, investigation, apprehension, or detention of individuals suspected or

convicted of offenses against the criminal laws of the United States.

8.     Plaintiff re-alleges and reincorporates the allegations contained in Paragraphs 1

through 23 contained herein.

9.     Defendants intentionally engaged in unlawful employment practices involving

Plaintiff because of his race, sex, age, and reprisal.

10.     Defendants discriminated against Plaintiff in connection with compensation, terms, conditions, and privileges of his employment.   Defendants further discriminated against Plaintiff when failing classify Plaintiff in a manner that deprived or intended to deprive him of employment benefits and adversely affected his law enforcement status. Defendants, singled Plaintiff and his agency in a manner that deprived him of equal employment opportunities that were provided to other non- AFRJCAN AMERICAN males (Caucasian males), similarly situated employees (Caucasian males), under 40 years of age with no prior EEO activity in violation of 42 U.S.C. Section 2000e (2) (a).

11.     The unlawful employment practices of Defendants had a disparate and adverse impact on Plaintiff because of his race, sex, age, retaliation and denied Equal Protection and Fair Labor Standards Act, as well as the right to Equal LEO benefits for duties preformed as a law enforcement officer. Under title 5 of the United States Code, some LEOs and other law enforcement personnel are covered by nonstandard premium pay provisions that result in perceptions of inequity. "No person could be denied "equal protection of the laws and full and equal benefit of all laws. The Fair Labor Standards Act applies to the Equal Pay Act, does not contain a specific "opposition" clause. However, courts have recognized that the statute prohibits retaliation based on the Defendant's opposition to allegedly unlawful practices.   Such employment practices were not job-related and were not consistent with business necessity.

12.     Plaintiff alleges that Defendants discriminated against him on the basis of race, sex, age and retaliation with malice and reckless indifference violating his federally protected rights. Plaintiff was investigated by the defendant's investigative OPR at the U. S. Attorney table during the Steve House trial. The testimony was recorded by email to the Plaintiff's immediate supervisor.

13.    Defendants also violated Plaintiffs rights under 42 U.S.C. Section 1981 by intentionally interfering with Plaintiff's performance of his employment based on his race, sex and reprisal. This intentional interference consisted of continuous discrimination which presently exists. Defendants discriminated against Plaintiff which led to the loss and impairment in whole and in part of his wages (overtime), benefits (retirement), promotions (temporary), privileges (opportunities the other Caucasian male enjoy), terms, and conditions of employment.

14.    Plaintiff re-alleges and reincorporates the allegations contained in Paragraphs  1 through 13 contained herein.

15.    In failing to protect Plaintiff from the continuing work place discrimination, reprisal and other offensive conduct of its agents, supervisors, and employees  described herein, Defendants abused its authority as Plaintiff's employer which vested them with substantial power to control his work environment and to damage his interests and well-being.

16.    Through the outrageous conduct described above, Defendants, its agents, supervisors, and employees acted with the intent to cause reckless disregard for the probability of causing Plaintiff to suffer severe emotional distress. The Defendant had the AFGE Union to represent the Plaintiff in an Administrative Hearing, knowingly that the Plaintiff was represented by Lawyer Adam Conti.

17.    As a direct and proximate result of Defendants actions, Plaintiff suffered severe emotional distress, including but not limited to severe depression, anxiety, highly unpleasant mental reactions such as horror, grief, shame, humiliation, embarrassment, anger, chagrin, etc. The distress inflicted upon Plaintiff was so severe that no reasonable person could be

expected to endure it without undergoing unreasonable suffering. Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

18.    Defendants conduct as described herein was malicious and oppressive. Defendants authorized, condoned, and ratified the unlawful conduct as evidenced in the foregoing paragraphs.

19.    Plaintiff repeats and re-alleges by reference each and every allegation contained in Paragraphs I through 18 and incorporate the same herein as though fully set forth.

20.    Defendants, through its agents, supervisors, or employees, Violated Plaintiff's civil rights in violation of 42 U.S.C. 1981, by intentionally interfering with Plaintiff's performance of his employment based on his race, sex and retaliation.
This intentional interference consisted of discrimination of a continuous nature presently exists. Defendants discriminated against Plaintiff which led to the loss and impairment in whole and in part, wages, benefits, promotions, privileges, terns, and conditions of Plaintiffs employment.

21.    The above-described acts and omissions by Defendants caused Plaintiff substantial injury and damage.

And incorporates the same by reference as though fully set forth herein.

## VII. DAMAGES

22.    Plaintiff sustained the following damages as a result of the actions and/or omissions of Defendant described hereinabove:

a.    Pay; the event that defendant terminated the plaintiff promotion (Area Commander) without paying the back pay, back overtime pay in an amount to compensate Plaintiff as the Court deems equitable and just;

b.    Restore Premium Pay and law enforcement retirement (LEO) retirement and sick leave for illness from Defendant continued attack on the Plaintiff. Defendant should pay interest on the back pay in an amount to compensate Plaintiff as the Court deems equitable and just;

c.    Emotional pain;

d.    Interest;

e.    Loss of earnings in the past; and

f.    Loss of LEO benefits.

g.    Medical bills

h.    Restore TSP with increase and interest based on market movement from August 2010 to present.

h.    All reasonable and necessary costs incurred in pursuit of this suit:

i.    All reasonable and necessary past Attorneys' fees incurred by or on behalf of Plaintiff:

## VIII. EXEMPLARY DAMAGES

23.    Plaintiff would further show that the acts and omissions of Defendants complained of herein were committed with malice and reckless indifference violated the federal protected rights of the Plaintiff.   In order to punish said Defendant for engaging in unlawful business practices and to deter such actions and/or omissions in the future, Plaintiff also seeks recovery from Defendant for exemplary damages.

## IX. SPECIFIC RELIEF

24.     Plaintiff seeks the following specific relief which arises out of the actions and/or omissions of Defendant described hereinabove:

a.  Prohibit by injunction the Defendants from engaging in unlawful employment practices.

b. Order   Defendant to take Responsible for Management   Officials   and   upper management action and to be disciplinant all of them for their actions, and attend training.

c. Order Defendant to post in Atlanta Central District and Regional Office in a conspicuous place the Notices that discrimination was found against them.

d. That Plaintiffs duties as GS-13 are restored to comparable duties.

e.  That Plaintiff be compensated for  appropriate employee  benefits to which he would have been entitled, with  prejudgment interest,  in amounts to be determined at trial, and  other affirmative relief necessary  to  eradicate  the  effects  of its unlawful  employment practices.

WHEREFORE, PREMISES CONSIDERED, Plaintiff, JAMES DAVIS, respectfully

prays that the Defendant be cited to appear and answer herein, and that upon a final hearing of the

cause, judgment be entered for the Plaintiff against Defendant for damages in an amount within the

jurisdictional limits of the Court; exemplary damages, front pay; back pay; together with interest as

allowed by law; costs of court; and such other and further relief to which the Plaintiff may be entitled

at law or in equity.

**Conclusion**

Therefore, the Plaintiff requests that the United States District Court for the Northern District of Georgia should render a final decision in favor of the Plaintiff based on discrimination; race (black), sex (male), age and reprisal for prior EEO activity, protected activity, protected class, cumulative hostile work environment incidents and undisputable new direct evidence. The Plaintiff asked for and claim entitlement to reimbursement for $30,000.00 in attorney's fees, court cost, compensatory damages, corrective action against Defendants, back pay, medical bills and restoration of TSP retirement, Premium pay, back pay for Overtime pay, and law enforcement retirement benefits.

Respectfully submitted this 22th day of April, 2015.

James C. Davis
4427 Minkslide Drive S.W.
Atlanta, Georgia 30331
Telephone: 404-519-9041
Email: jamesc4861@yahoo.com



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Office of Federal Operations
P.O. Box 77960
Washington, DC 20013

James C. Davis,
Complainant,

v.

Jeh Johnson,
Secretary,
Department of Homeland Security
(Immigration and Customs Enforcement),
Agency.

Appeal No. 0120123458

Agency No. HS-HQ-01144-2010

## DECISION

Complainant filed an appeal from the Agency's August 13, 2012 Final Decision concerning his equal employment opportunity (EEO) complaint alleging employment discrimination in violation of Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. § 2000e et seq. For the following reasons, the Commission AFFIRMS the Agency's Final Decision finding no discrimination.

## BACKGROUND

At the time of events giving rise to this complaint, Complainant worked as an Area Commander, Physical Security Specialist, at the Agency's Federal Protective Services (FPS) Region 4 facility in Atlanta, Georgia. On August 13, 2010, Complainant filed an EEO complaint alleging that the Agency discriminated against him on the bases of race (African-American), sex (male), and in reprisal for prior protected EEO activity under Title VII of the Civil Rights Act of 1964 when:

1.    On April 27, 2010, Complainant received a mid-term performance appraisal that was due on April 17, 2010. Subsequently, on April 30, 2010, Complainant became aware that the mid-term performance appraisal was submitted and annotated to reflect the fact that he refused to sign it.

2.    On July 21, 2010, Complainant was omitted from a meeting.

3.    On August 6, 2010, Complainant's supervisor forbade him from speaking with other supervisors about decisions he made.

4.      Beginning on April 12, 2010, Complainant was assigned more work than similarly situated coworkers.

5.      On or about July 29, 2010, Complainant's supervisor failed to advise the Regional Director that he was absent from work with permission in order to participate in a trial.

6.      Effective August 28, 2010, Complainant was removed from his temporary promotion of Physical Security Specialist (LESO), GS-0080-13, to the grade of GS-12.

At the conclusion of the investigation, the Agency provided Complainant with a copy of the report of investigation and notice of his right to request a hearing before an EEOC Administrative Judge (AJ). Complainant requested a hearing but subsequently withdrew his request. By order dated October 29, 2011, the AJ dismissed Complainant's complaint from the hearing process pursuant to Complainant's withdrawal. Consequently, the Agency issued a Final Decision pursuant to 29 C.F.R. § 1614.110(b).

In its Final Decision, the Agency found that management officials articulated legitimate, nondiscriminatory reasons for the Agency's actions for most of Complainant's claims and that some incidents did not occur as Complainant described in his complaint. Specifically, the Agency found that with respect to Complainant's claim regarding his midyear performance evaluation, that Complainant received his evaluation on April 27, 2010, and indicated to his supervisor, S1, that he wished to review it. When Complainant said that he would not sign the evaluation, S1 submitted it the next day, noting that Complainant would not sign the evaluation.

Regarding Complainant's claim that he was excluded from a meeting, the Agency found that the meeting identified by Complainant was between S1, Complainant's coworker, C1, and S1's supervisor. The Agency found that the meeting did not involve Complainant and so, he was not invited to attend.

The Agency found that S1 denied that he forbade Complainant from discussing S1's decisions with other supervisors. Regarding Complainant's claim that he was assigned more work than other Area Commanders, S1 explained that the work is distributed equitably. Additionally, C1 explained that Complainant is assigned to buildings rated "1" and "2", which are less difficult, and that Complainant has a lighter workload than any other Area Commanders.

The Agency further found that regarding Complainant's absence from the workplace to attend a trial, that S1 did not consider Complainant absent from work because Complainant attended the trial in response to a subpoena and was acting in an official capacity. S1, the Agency found, does not report the daily status of his subordinate employees to his supervisor, S2. S1 also explained, the Agency noted, that Complainant suffered no consequences as a result of his attendance at the identified court appearance.

The Agency found that the Agency, in a letter signed on behalf of S3, Complainant's third level supervisor, set forth multiple reasons for removing Complainant from his temporary promotion. The letter stated that Complainant was being removed for unsatisfactory performance. Specifically, the letter explained that Complainant failed to keep management informed of certain actions and failed to provide proper guidance to his subordinate employees. In his statement, S1 verified that the letter reflected the performance issues that S1 observed. The Agency found the evidence established that Complainant was well aware of S1's expectations regarding three core areas of supervisory responsibility and that Complainant failed to meet those expectations.

The Agency's Final Decision considered Complainant's overall harassment claim including all of the incidents set forth in his complaint. The Agency found that Complainant did not present evidence that he was subjected to harassment based on his race, sex, or prior EEO activity and that Complainant did not show that the Agency's reasons articulated for the discrete actions were untrue or a pretext to mask discrimination. The Final Decision concluded that Complainant failed to prove that the Agency subjected him to discrimination as alleged.

## ANALYSIS AND FINDINGS

As this is an appeal from a decision issued without a hearing, pursuant to 29 C.F.R. § 1614.110(b), the Agency's decision is subject to de novo review by the Commission. 29 C.F.R. § 1614.405(a). See Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614, at Chapter 9, § VI.A. (November 9, 1999) (explaining that the de novo standard of review "requires that the Commission examine the record without regard to the factual and legal determinations of the previous decision maker," and that EEOC "review the documents, statements, and testimony of record, including any timely and relevant submissions of the parties, and . . . issue its decision based on the Commission's own assessment of the record and its interpretation of the law").

To prevail in a disparate treatment claim such as this, Complainant must satisfy the three-part evidentiary scheme fashioned by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). He must generally establish a prima facie case by demonstrating that he was subjected to an adverse employment action under circumstances that would support an inference of discrimination. Furnco Constr. Co. v. Waters, 438 U.S. 567, 576 (1978). The prima facie inquiry may be dispensed with in this case, however, since the Agency has articulated legitimate and nondiscriminatory reasons for its conduct. See U.S. Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 713-17 (1983); Holley v. Dep't of Veterans Affairs, EEOC Request No. 05950842 (Nov. 13, 1997). To ultimately prevail, Complainant must prove, by a preponderance of the evidence, that the Agency's explanation is a pretext for discrimination. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000); St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 519 (1993); Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256 (1981); Holley, supra; Pavelka v. Dep't of the Navy, EEOC Request No. 05950351 (Dec. 14, 1995).

To establish a claim of harassment a complainant must show that:  (1) they belong to a statutorily protected class; (2) they were subjected to harassment in the form of unwelcome verbal or physical conduct involving the protected class; (3) the harassment complained of was based on their statutorily protected class; (4) the harassment affected a term or condition of employment and/or had the purpose or effect of unreasonably interfering with the work environment and/or creating an intimidating, hostile, or offensive work environment; and (5) there is a basis for imputing liability to the employer.  See Henson v. City of Dundee, 682 F.2d 897 (11th Cir. 1982).  Further, the incidents must have been "sufficiently severe or pervasive to alter the conditions of [complainant's] employment and create an abusive working environment."  Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993).  The harasser's conduct should be evaluated from the objective viewpoint of a reasonable person in the victim's circumstances.  Enforcement Guidance on Harris v. Forklift Systems Inc., EEOC Notice No. 915.002 at 6 (Mar. 8, 1994).

With respect to element (5), an employer is subject to vicarious liability for harassment when it is created by a supervisor with immediate (or successively higher) authority over the employee. See Burlington Industries, Inc., v. Ellerth, 524 U.S. 742, 118 S. Ct. 2257, 2270 (1998); Faragher v. City of Boca Raton, 524 U.S. 775, 118 S. Ct. 2275, 2292-93 (1998).  However, where the harassment does not result in a tangible employment action the agency can raise an affirmative defense, which is subject to proof by a preponderance of the evidence, by demonstrating:  (1) that it exercised reasonable care to prevent and correct promptly any harassing behavior; and (2) that complainant unreasonably failed to take advantage of any preventive or corrective opportunities provided by the agency or to avoid harm otherwise.  See Burlington Industries, supra; Faragher, supra; Enforcement Guidance: Vicarious Liability for Unlawful Harassment by Supervisors, EEOC Notice No. 915.002 (June 18, 1999).  This defense is not available when the harassment results in a tangible employment action (e.g., a discharge, demotion, or undesirable reassignment) being taken against the employee.  In the case of co-worker harassment, an agency is responsible for acts of harassment in the workplace where the agency (or its agents) knew or should have known of the conduct, unless it can show that it took immediate and appropriate corrective action.  Id.

In the instant case, we find the record supports the Agency's Final Decision.  We find, as did the Agency, that S1 articulated legitimate, nondiscriminatory reasons for the actions in which he was involved that did occur.  Complainant did not show that S1's reasons were false or a pretext to mask discrimination.

Regarding Complainant's midyear review, we find no dispute that Complainant did not sign the review when it was presented to him by S1.  The evidence shows that S1 submitted the unsigned review and that he noted on the review that Complainant refused to sign it. Whether Complainant was ill and did not return the review in time for submission, and/or notified S1 that he did not intend to sign it, the review was not signed and S1 annotated the review accordingly.  We find that Complainant did not show that more likely than not S1 was

motivated Complainant's race, sex, or prior EEO activity when S1 added to the review an explanation for why the review was not signed by Complainant.

We find the evidence does not show that more likely than not Complainant was forbidden by S1 from discussing decisions he made with other supervisors and that S1 specifically denies this allegation. Nevertheless, even if it did happen as Complainant describes, in light of our finding regarding Complainant's discrete claims, this incident, either alone or together with the remaining incidents of harassment, does not rise to the level of harassment.

We find the evidence shows that C1 requested a meeting with his supervisors to discuss some concerns that he had identified in a letter sent to his supervisors. We find no evidence that Complainant was inappropriately, much less discriminatorily, excluded from a meeting between C1 and C1's supervisors.

We further find the Agency properly considered C1's statement that Complainant's assigned buildings are less difficult assignments the buildings to which C1 and other Area Commanders are assigned. We find that Complainant did not present evidence that more likely than not that he was given greater work assignments than other Area Commanders or that his assignments were motivated by his race, sex, or prior EEO activity.

With respect to the incident in which Complainant was asked to account for his whereabouts following his attendance at court pursuant to subpoena, we find, as did the Agency, that Complainant suffered no adverse consequence as a result of his court appearance and we find that the action would not reasonably deter someone from pursuing the EEO process. We find that Complainant was simply and reasonably questioned about his whereabouts when at the court appearance.

We find the record supports the Agency's finding that Complainant was removed from his temporary promotion to the position of Area Commander for unsatisfactory performance. We do not find that Complainant identified any other employee, outside of his protected groups, also serving in a temporary promotion as Complainant was, who had the same performance issues described in the letter notifying Complainant of his removal, who was not also removed from that position. We find that Complainant has not show that his race, sex, or prior EEO activity played any role in S1's decision to remove Complainant from the temporary position and note, as did the Agency, that it was S1 who selected Complainant in competition with other employees, to serve in the promotional position.

Due to our findings of no discrimination for all of the incidents, we find that Complainant failed to show he was subjected to a hostile work environment.

6                                    0120123458

## CONCLUSION

Based on a thorough review of the record, we AFFIRM the Agency's Final Decision finding no discrimination.

## STATEMENT OF RIGHTS - ON APPEAL
## RECONSIDERATION (M0610)

The Commission may, in its discretion, reconsider the decision in this case if the Complainant or the Agency submits a written request containing arguments or evidence which tend to establish that:

1.    The appellate decision involved a clearly erroneous interpretation of material fact or law; or
2.    The appellate decision will have a substantial impact on the policies, practices, or operations of the Agency.

Requests to reconsider, with supporting statement or brief, must be filed with the Office of Federal Operations (OFO) within thirty (30) calendar days of receipt of this decision or within twenty (20) calendar days of receipt of another party's timely request for reconsideration. See 29 C.F.R. § 1614.405; Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614 (EEO MD-110), at 9-18 (November 9, 1999). All requests and arguments must be submitted to the Director, Office of Federal Operations, Equal Employment Opportunity Commission, P.O. Box 77960, Washington, DC 20013. In the absence of a legible postmark, the request to reconsider shall be deemed timely filed if it is received by mail within five days of the expiration of the applicable filing period. See 29 C.F.R. § 1614.604. The request or opposition must also include proof of service on the other party.

Failure to file within the time period will result in dismissal of your request for reconsideration as untimely, unless extenuating circumstances prevented the timely filing of the request. Any supporting documentation must be submitted with your request for reconsideration. The Commission will consider requests for reconsideration filed after the deadline only in very limited circumstances. See 29 C.F.R. § 1614.604(c).

## COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION (S0610)

You have the right to file a civil action in an appropriate United States District Court within ninety (90) calendar days from the date that you receive this decision. If you file a civil action, you must name as the defendant in the complaint the person who is the official Agency head or department head, identifying that person by his or her full name and official title. Failure to do so may result in the dismissal of your case in court. "Agency" or "department" means the national organization, and not the local office, facility or department in which you work. If you file a request to reconsider and also file a civil action, filing a civil action will terminate the administrative processing of your complaint.

7                                                  0120123458

## RIGHT TO REQUEST COUNSEL (Z0610)

If you decide to file a civil action, and if you do not have or cannot afford the services of an attorney, you may request from the Court that the Court appoint an attorney to represent you and that the Court also permit you to file the action without payment of fees, costs, or other security.  See Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.; the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 791, 794(c).  **The grant or denial of the request is within the sole discretion of the Court.**  Filing a request for an attorney with the Court does not extend your time in which to file a civil action.  Both the request and the civil action must be filed within the time limits as stated in the paragraph above ("Right to File a Civil Action").

FOR THE COMMISSION:

Carlton M. Hadden, Director
Office of Federal Operations


January 16, 2015
Date

8                                              0120123458

## CERTIFICATE OF MAILING

For timeliness purposes, the Commission will presume that this decision was received within five (5) calendar days after it was mailed.   I certify that this decision was mailed to the following recipients on the date below:

James C. Davis
4427 Minkslide Dr  SW
Atlanta, GA  30331

U.S. Department of Homeland Security
Office for Civil Rights and Civil Liberties
245 Murray Ln., SW  Bldg. 410
Mail Stop 0191
Washington, DC  20528

Chief, Labor and Employment Law Division
U.S. Immigration and Customs Enforcement
Office of the Principal Legal Advisor
500 12th Street, SW
Washington, DC  20536

January 16, 2015
Date

_____
Compliance and Control Division